UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　Plaintiff,<br><br>v.<br><br>CHRISTOPHER CORREA,<br>　　Defendant. | Case No. H-15-679 |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas, and Michael Chu, Assistant U.S Attorney, and the defendant, Christopher Correa ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.　Defendant agrees to plead guilty to Counts 1 to 5 of the Information, which charge defendant with Unauthorized Access of a Protected Computer, in violation of Title 18, United States Code, Sections 1030(a)(2)(C) & (c)(2)(B)(iii). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Information, or proven to a jury beyond a reasonable doubt.

### Punishment Range

2.　The statutory maximum penalty for violating Title 18, United States Code, Section 1030(a)(2)(C) & (c)(2)(B)(iii) is imprisonment of not more than 5 years and a fine of not more than

1

$250,000. The Parties agree to recommend that Counts 1 to 5 be served concurrently, not consecutively, with each other.

3. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

**Mandatory Special Assessment**

4. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

5. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

## Waiver of Appeal and Collateral Review

6. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States may choose to assert its rights under this agreement and seek specific performance of these waivers.

7. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

8. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

9. The United States agrees to each of the following:

a. At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment pursuant to section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines; and

b. If Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, the United States agrees not to oppose Defendant's request for an additional one-level departure based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding his role in the offense (if Defendant's offense level is 16 or greater).

c. The Parties agree that the intended loss in this case is $1.7 million, which would result in a 16 level enhancement under U.S.S.G. § 2B1.1(b)(1)(I).

d. The Parties also agree that at nearly all times, defendant intentionally used sophisticated means to mask his identity, his location, and the type of device he used, which would result in a 2 level enhancement under U.S.S.G. § 2B1.1(b)(10)(C).

10. The United States agrees that it will not further criminally prosecute Defendant for offenses arising from conduct charged in the Information.

*Continued on Next Page*

### United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

   a. to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

   b. to set forth or dispute sentencing factors or facts material to sentencing;

   c. to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

   d. to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

   e. to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all

of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

13. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

   a. If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the Court all agree.

   b. At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

   c. At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts 1 to 5 of the Information. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt.

15. The parties further agree that the United States could prove the following facts, among others, to establish Defendant's guilt beyond any reasonable doubt:

**Background**

(1) The Houston Astros and the St. Louis Cardinals were Major League Baseball teams. The Astros' operations were primarily based within the Southern District of Texas.

(2) The Astros and the Cardinals, like other teams, measured and analyzed in-game activities to look for advantages that may not have been apparent to their competitors.

(3) Defendant Christopher Correa was, from 2009 to July 2015, employed by the St. Louis Cardinals. In 2013, he became the Cardinals' Director of Baseball Development, where he provided analytical support to all areas of the Cardinals' baseball operations.

(4) Until late 2011, Victims A and B were both employed by the St. Louis Cardinals. After that, they joined the Astros.

(5) The Astros operated an e-mail system for their employees. The Astros also operated a private online database called Ground Control. Both systems were maintained on computers located within the Southern District of Texas that were used in (and affected) interstate commerce and communication. The Astros used Ground Control to house a wide variety of confidential data, including scouting reports, statistics, and contract information, all to improve the team's scouting, communication, and decision-making for every baseball-related decision. Victims A and B, as well as other Astros employees, were assigned password-protected accounts by which they could access Ground Control and their Astros e-mail.

(6) From no later than March 2013 to through at least March 2014, defendant Christopher Correa accessed the computers of the Houston Astros without authorization. In particular, he accessed Victim A's e-mail account and the Ground Control accounts of Victim A, Victim B, and other Astros employees.

7

(7) Correa illegally accessed the Astros' computers in the following way: In December 2011, as Victim A prepared to leave the St. Louis Cardinals and join the Houston Astros, he was directed to turn over his Cardinals-owned laptop to Correa – along with the laptop's password. When Victim A joined the Astros, he re-used a similar (albeit obscure) password for his Astros' e-mail and Ground Control accounts. No later than March 2013, Correa began accessing Victim A's Ground Control and Astros' e-mail accounts using a variation of the password to Victim A's Cardinals laptop. What follows is a selection of the instances in which Correa accessed the Astros' computers without authorization.

**Correa's intrusions into Ground Control started no later than March 24, 2013**

(8) On March 24, 2013, Correa accessed Victim A's Ground Control account for about an hour and 43 minutes. There, he accessed an Excel file of the Astros' scouting list of every player eligible for that year's draft, and how each Astros scout ranked them. He also viewed, among other things, the following confidential information:

- Scouting weekly digest page, which listed stats and notes on recent performance and injuries for top prospects whom the Astros were considering drafting, as well as a regional scout's evaluations of his prospects' estimated peak rise, and the bonus he proposed be offered;

- Scouting crosscheck page, which listed prospects seen by cross-checkers (higher level scouts – as players are more likely to be drafted, more scouting resources are devoted to evaluating them) and scouting page;

- Astros main draft page, as well as subsets of players such as college hitters, high school pitchers, etc. whom the Astros were considering drafting, ranked by analytics, and the bonus proposed to be offered.

**Correa intruded into Victim A's Ground Control during the June 6-8, 2013 Amateur Draft**

(9) On June 8, 2013, Correa accessed Victim A's Ground Control account and information on players who had not yet been drafted; draft pages for Player A, whom the Astros

drafted later that day, and Player B, who was drafted by another team; information on Players C, D, and E, three players whom the Cardinals had drafted the day before.

**Correa intruded into Victim A's Ground Control during the July 31, 2013 Trade Deadline**

(10)    On July 31, 2013, Correa accessed Victim A's Ground Control account and viewed notes of the Astros' trade discussions.

**On March 10, 2014, shortly after an article about Ground Control had spread nationwide, Correa illicitly accessed Victim A's e-mail system**

(11)    Around March 9, 2014, the Houston Chronicle published an in-depth article about Ground Control. This article was picked up by other media outlets across the country.

(12)    The Astros reacted by implementing several security precautions. The team changed Ground Control's website address (URL). It also required all Ground Control users to change their passwords to more complex passwords the next time they logged in. Concerned that (a) some users would not log into Ground Control soon enough to change their password, and that (b) some of those users' existing passwords might have been guessed, the team also reset all Ground Control passwords to a more complex default password, and e-mailed the new default password and the new URL to all Ground Control users.

(13)    On the evening of March 10, 2014, Correa accessed Victim A's Astros e-mail account. There, he found an e-mail that contained Ground Control's new URL. He also found an e-mail that contained the newly reset password for all Ground Control users.

(14)    A few minutes later, Correa used the information from Victim A's e-mail account to access Victim B's Ground Control account without authorization. There, Correa viewed 118 webpages including the following confidential information:

- Lists ranking the players whom Astros scouts desired in the upcoming draft, in order of desirability, and the bonus that scouts recommended that the Astros offer;

- Summaries of evaluations written by Astros scouts of players whom the Astros were thinking of drafting;

- The Astros' Amateur Draft Board for 2014 (which was not yet completed), and then for 2013 (which was); and

- Summaries of the college pitchers and hitters whom the Astros' analytics department regarded as the top performers.

(15) A few hours later, in the morning of March 11, 2014, Correa again illicitly accessed Victim B's Ground Control account and viewed confidential information such as the task page of the Astros' analytics department, which listed the projects that the department was researching. He then logged out and illicitly accessed the Ground Control account of Victim C, who also worked with the Astros' analytics department.

**On March 27, 2014, Correa again illicitly accessed Victim B's Ground Control account**

(16) There, he viewed confidential information such as:

- Notes of the Astros' trade discussions with other MLB teams;

- Reports of players in the Astros' minor league system and their development; and

- Reports of team evaluators of players in the Astros' system, and how these players were developing.

(17) The Parties agree that the defendant's intended loss under the U.S. Sentencing Guidelines definition for all of his intrusions is $1.7 million. The Parties further agree that the value of the information that Correa obtained on each of the occasions underlying Counts 1 to 5 exceeds $5,000. The Parties also agree that at nearly all times, defendant intentionally used sophisticated means to mask his identity, his location, and the type of device he used.

**Breach of Plea Agreement**

16. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea

agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

17. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents

necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States. The United States does not waive any rights or remedies, including forfeiture of property, as a means to reimburse the crime victim(s). Nothing in this Agreement precludes the United States from pursuing statutorily permitted enforcement action and any and all remedies to collect restitution once a restitution order is imposed.

19. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Restitution

20. Defendant understands that a mandatory restitution order will be imposed against him in this case and agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred an actual monetary loss of $279,038.65.

    (a) Defendant understands and agrees that at sentencing, the Court will determine the amount of restitution to fully compensate the victim(s). Defendant understands that the restitution amount imposed by the Court will be due and payable immediately and agrees that Defendant will not attempt to avoid or delay payment.

21. Subject to the provisions listed above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

### Fines

22. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by

the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions as described above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

23. This written plea agreement, consisting of 15 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

*Continued on Next Page*

24. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at __Houston__, Texas, on __January 8__, 2016.

_____
Christopher Correa, Defendant

Subscribed and sworn to before me on __January 8__, 2016.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Kenneth Magidson
United States Attorney

By: _____    _____
Michael Chu                              David Adler, Esq.
Assistant U.S. Attorney                  Attorney for Defendant

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. H-15-679 |
| CHRISTOPHER CORREA | |

**PLEA AGREEMENT -- ADDENDUM**

I have fully explained to Defendant his rights with respect to the pending Information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          1/8/16
David Adler, Esq., Attorney for Defendant        Date

I have consulted with my attorney and fully understand all my rights with respect to the Information pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____          1-8-2016
Christopher Correa, Defendant          Date

15