UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


UNITED STATES OF AMERICA      *    Criminal No. H-15-679
                              *
VERSUS                        *    Houston, Texas
                              *    January 8, 2016
CHRISTOPHER CORREA            *    2:00 p.m.


REARRAIGNMENT
BEFORE THE HONORABLE LYNN N. HUGHES
UNITED STATES DISTRICT JUDGE


For the Government:

        Mr. Michael Chu
        Office of the U.S. Attorney
        1000 Louisiana
        Suite 2300
        Houston, Texas 77002


For the Defendant:

        Mr. David Adler
        David Adler PC
        6750 W Loop South
        Suite 120
        Bellaire, TX 77401


Court Reporter:

        Fred Warner
        Official Court Reporter
        515 Rusk Ave.
        Houston, Texas 77002


Proceedings recorded by mechanical stenography, produced by
computer aided transcription.

1    THE COURT:  United States of America versus

2 Christopher Correa.

3    MR. CHU:  Good afternoon, Your Honor.  Michael Chu

4 for the United States.

5    MR. ADLER:  Good afternoon, Your Honor.  David Adler

6 for Mr. Correa, who is also present in the courtroom.

7    THE COURT:  Mr. Correa, would you raise your right

8 hand, please, sir.

9    Do you solemnly swear that the testimony you

10 will give will be the truth, the whole truth and nothing but

11 the truth?

12    THE DEFENDANT:  I do.

13    THE COURT:  Tell me your full name, please.

14    THE DEFENDANT:  Christopher Anthony Correa.

15    THE COURT:  How old are you?

16    THE DEFENDANT:  35.

17    THE COURT:  How many years of education have you

18 had?

19    THE DEFENDANT:  Approximately 18.

20    THE COURT:  18?

21    THE DEFENDANT:  (Indicating in the affirmative).

22    THE COURT:  And what country are you a citizen?

23    THE DEFENDANT:  The United States.

24    THE COURT:  I don't mean to offended you, but I ask

25 everybody, because if you're not, I need to talk to you

differently about things.

        THE DEFENDANT:  I understand.

        THE COURT:  Are you or have you recently been under the care of a psychologist or physician?

        THE DEFENDANT:  I have not.

        THE COURT:  Have you been using any recreational drugs or alcohol?

        THE DEFENDANT:  I have not.

        THE COURT:  No alcohol at all?

        THE DEFENDANT:  Occasional alcohol.

        THE COURT:  What's your definite of "occasional"?

        THE DEFENDANT:  About once a week, sir.

        THE COURT:  How much?

        THE DEFENDANT:  Two to three drinks.

        THE COURT:  How do you feel today?

        THE DEFENDANT:  I feel okay.

        THE COURT:  Have you had an opportunity to talk to Mr. Adler about your case and ask all of the questions and get all of the answers you feel you need from him?

        THE DEFENDANT:  I have, Your Honor.

        THE COURT:  Are you happy with the work that he has done for you?

        THE DEFENDANT:  I am, Your Honor.

        THE COURT:  Now, it's been proposed that you proceed on these charges without going to a grand jury.  A grand jury

is from 16 to 23 people.  They wouldn't decide whether you
were guilty or not, they would simply decide whether there
was enough evidence you should be held for trial.

The grand jury could decide that you did all of
this thing but there's no public utility to the prosecution
and not indict you on background.

If you don't go to the grand jury, we'll go
ahead with this serious case based only on the piece of paper
Mr. Chu typed, and I'll be the first person to look at the
charges.

THE DEFENDANT:  I understand.

THE COURT:  Are you sure you want to do that?

THE DEFENDANT:  I do.

THE COURT:  Mr. Adler, have you talked to him about
this?

MR. ADLER:  I have, Your Honor.

THE COURT:  How do you plead to Counts 1 through 5
of unauthorized access to a computer?

THE DEFENDANT:  I plead guilty, Your Honor.

THE COURT:  Mr. Correa, under the Constitution you
have a right to a trial by jury on these charges.  At that
trial you would be considered innocent.  You would never have
to prove that you're innocent.  The government would have to
prove beyond a reasonable doubt that you did what you have
been charged with.

1   At that trial Mr. Adler can try to block the
2   government's evidence by objecting.  He could ask questions
3   for your side of the story of the government's witnesses.
4   You could bring other witnesses for your side of the story,
5   if there are any.
6   At the trial you could testify if you wanted
7   to.  If you chose not to testify, no one could make you
8   testify, and no one can use it against you that you did not
9   testify.
10  If you continue to plead guilty, there will be
11  no jury, no trial, no exhibits, I'll find you guilty and go
12  ahead with the punishment.
13  Having talked about this stuff with you, do you
14  still want to plead guilty?
15  THE DEFENDANT:  I do.
16  THE COURT:  You will also have to testify against
17  yourself some because I am going to ask you about what you
18  did to make sure you are pleading guilty to something you
19  really did.
20  THE DEFENDANT:  I understand.
21  THE COURT:  The parts of the crime is that you
22  intentionally had access to a computer and the data on it
23  that was used in interstate commerce, and that you did that,
24  you got information off of the computers, the value of which
25  exceeded $5,000.  So, for five counts that has to be 5,000 on

each count.

    The punishment is imprisonment for up to five years, a fine of up to $250,000.

    The restitution is possible.  Restitution?

    MR. CHU:  Beg your pardon, Your Honor?

    THE COURT:  What is restitution?

    MR. CHU:  It's about $279,000, Your Honor.

    THE COURT:  All right.  So there can be restitution whatever the loss was.  And there's a hundred-dollar tax on each count.

    Do have any question about that?

    THE DEFENDANT:  I don't have any questions, Your Honor.

    THE COURT:  Has anybody threatened you to get you to plead guilty?

    THE DEFENDANT:  No, they have not.

    THE COURT:  Now, I understand you have reached an agreement -- it's your turn, Mr. Adler.  You and I are doing our turn.  Time for spring.

    As I understand the agreement it is that you agreed to plead guilty to all five counts, give up your right to appeal or otherwise attack the judgment now or forever, and you agree that the intended loss is $1,700,000, and you used sophisticated means, and you agree to restitution.

    In exchange for that, the United States says

you're really sorry and you were prompt in pleading.  That's
about it.

YOU understand this no appeal or collateral
attack means that you skip the grand jury and you're skipping
the petit jury, like most people, and you're limiting all
relief you're ever going to get in the case to me.  Is that
clear?

THE DEFENDANT:  Yes, Your Honor.  I accept
responsibility for my mistakes.

THE COURT:  No.  I am talking to you about the ways
in which you try to get out of it after you find out what I
do to you.  And you can't.

And you understand I have no idea what I am
going to do?

THE DEFENDANT:  I understand.

THE COURT:  Has the agreement been signed?

MR. ADLER:  It has, Your Honor.

THE COURT:  And has paragraph 10 --

MR. ADLER:  It's removed.

THE COURT:  The Magidson clause been struck?

MR. CHU:  Yes, Your Honor.

THE COURT:  Outside of what is in that written
agreement --

CASE MANAGER:  You have the original.

THE COURT:  That's a very dangerous thing to do.

Other than what's in that long, tedious document, has anybody promised you anything?

THE DEFENDANT: No, Your Honor.

THE COURT: There has been a lot of talk about guidelines, and that's an arithmetical calculation which tries to reduce the varieties of human life to a one-page memo.

Anyway, it's like we don't need Shakespeare to describe human life, we got a matrix.

But the probation department -- you can agree with the government and probation can agree with you, but I get to decide.

THE DEFENDANT: I understand.

THE COURT: After I decide, I get to decide whether to follow them or not.

May I see, Glenda, the one I put the post-it on.

The trick is finding, Mr. Chu, the paragraph in the several hundred pages of agreement here.

Explain to me what Ground Control is. My son is a rocket scientist with NASA. I thought I knew.

THE DEFENDANT: Would you like me to explain?

THE COURT: No. I very much require you to explain this.

THE DEFENDANT: Ground Control is a website that

1  provides the means for a baseball team to store information

2  about player evaluations.

3          THE COURT:  So it would be like an employment site,

4  and you subscribe and then you store your data on applicants

5  and other companies do it?

6          THE DEFENDANT:  Yeah.  That's not a -- yeah, that

7  would be an accurate comparison, correct.

8          THE COURT:  And do I correctly understand that you,

9  while working for the Cardinals, went to the Astros cloud and

10 got their data so you could see what they were interested in

11 and what they were planning to do with players and draft

12 picks current or past or whatever?

13         THE DEFENDANT:  Yes, Your Honor.  I trespassed

14 repeatedly.

15         THE COURT:  Well, for the reasons I stated.

16         THE DEFENDANT:  That wasn't the original intention;

17 but, yes, your statement is accurate.

18         THE COURT:  What was your original intention?

19         THE DEFENDANT:  I originally accessed, trespassed

20 the Astros' resources based on suspicions that they had

21 misappropriated proprietary work from myself and my

22 colleagues.

23         THE COURT:  Which colleagues?

24         THE DEFENDANT:  My colleagues at the Cardinals.

25         THE COURT:  So you broke in their house to find out

1  if they were stealing your stuff?

2         THE DEFENDANT:  Stupid, I know.

3         THE COURT:  That didn't strike you as peculiar?

4         THE DEFENDANT:  It was stupid.

5         THE COURT:  I had a death penalty case.  Opponents

6  in the death penalty, the case documents found out the

7  pharmacy applying the chemicals, so they got death threats.

8  "We're so against the dealt penalty we'll kill you if you

9  help them carry it out."

10        How did you arrive at this intended loss of

11 $1.7 million?

12        MR. CHU:  Your Honor, this is the number we arrived

13 at.

14        THE COURT:  Speak up.

15        MR. CHU:  After lengthy negotiations between the

16 parties --

17        THE COURT:  Before the microphone.  Even your boss

18 can't hear you.

19        MR. CHU:  This is kind of a sore throat going around

20 our floor this year.

21        THE COURT:  Don't make excuses.

22        MR. CHU:  But since much of the data that we looked

23 at focused on the 2013 draft, what we did was we took the

24 number of players that he looked at by 200 and we divided

25 that by the number of players that were eligible to be

drafted that year, and we multiplied that times the scouting budget of the Astros that year.  That comes to $1.7 million.

Also this is the number that the parties have arrived at after lengthy and careful negotiations.

THE COURT:  The Astros' budget was not spent on anything other than the data in that database?

MR. CHU:  Your Honor, after speaking with the Astros repeatedly, we believe that the deliverable from all of those expenses was the information that they put in that database.  So everything that they did for the scouting was also they could have it all put in this one place so they could analyze it.

THE COURT:  I understand that.  But you are suggesting that the entire $1.7 million was the Astros' recruiting budget and it was spent all on the draft.  There were no, what do you call them, free agents or lateral transfers or trades?

MR. CHU:  Those were different parts of the budget, Your Honor.  The answer is that is correct, Your Honor.

THE COURT:  That's right.

So 1.7 million is how much they spent working up their own profiles of these players and their abilities and cost and that sort of thing?

MR. CHU:  Yes, Your Honor.  Those 200 players.

THE COURT:  In baseball is the draft limited to

people joining major league baseball for the first time?

Wait a minute. Get close to the microphone.

THE DEFENDANT: Yes. The draft's intended to recruit amateur baseball players into the professional ranks.

THE COURT: So what do you call it when you're dealing with players who either have played or are playing elsewhere?

THE DEFENDANT: So that would be professional scouting or international scouting.

THE COURT: What was the second word?

THE DEFENDANT: International scouting. In other words, the draft only covers domestic players from the United States, Puerto Rico and Canada.

THE COURT: Do you know what the Astros' budget was for the domestic professional scout?

THE DEFENDANT: I don't have access to that information.

THE COURT: It doesn't matter, but I was just curious.

Mr. Chu, what were the sophisticated means he used?

MR. CHU: Your Honor, the defendant used software.

THE COURT: Just like Justin Bieber. Get right up to the microphone.

MR. CHU: Justin who?

1    Your Honor, the defendant used software to mask
2    his identity, his location and the device he was using.
3    THE COURT:  This is software that anybody can buy?
4    MR. CHU:  Yes.
5    THE COURT:  Has the Astros fellow changed his
6    password, because I want to know what you thought the obscure
7    password was.
8    MR. CHU:  He has changed it since then, Your Honor.
9    THE COURT:  Well, what was it, because you say it
10   was obscure, similar.
11   MR. CHU:  It was based on the name of a player who
12   was scrawny and who would not have been thought of to succeed
13   in the major leagues, but through effort and determination he
14   succeeded anyway.  So this user of the password just liked
15   that name, so he just kept on using that name over the years.
16   THE COURT:  That's admirable.
17   MR. ADLER:  Kind of like Magidson123.
18   THE COURT:  Or Magidson1/2,1/4,1/3.
19   I like the scrawny people who succeed through
20   their hard work.
21   MR. CHU:  Thank you, Your Honor.
22   THE COURT:  All right.  Anything else in there?
23   Each count is just an episode of the same
24   thing?
25   MR. CHU:  Yes, Your Honor.

1      THE COURT:  Different drafts, different years,
2  different months?
3      MR. CHU:  Yes, Your Honor.
4      THE COURT:  Does that roughly describe what you did?
5      THE DEFENDANT:  Yes, it does.
6      THE COURT:  And did you read all of these tedious
7  details?
8      THE DEFENDANT:  Yes, I did.
9      THE COURT:  And that's what you did?
10     THE DEFENDANT:  Yes.
11     THE COURT:  Why you did it?
12     THE DEFENDANT:  Yes, Your Honor.
13     THE COURT:  Did you find any Cardinal's information
14 in the computer?
15     THE DEFENDANT:  I did, Your Honor.
16     THE COURT:  Who did you tell?
17     THE DEFENDANT:  Colleagues.
18     THE COURT:  At the Cardinals?
19     THE DEFENDANT:  Yeah.
20     MR. ADLER:  He did not go to the FBI, which is
21 obviously what he should have done.
22     THE COURT:  Did you do a memorandum in writing about
23 what you did, when you did it and why you did it?
24     THE DEFENDANT:  No, Your Honor.
25     THE COURT:  All right.  Mr. Correa, I accept your

plea to the five counts and find you guilty as charged.

Are we going to have a precipitous sentencing, too?

MR. ADLER: Right now?

THE COURT: Not right now.

The computer, I mean Glenda, says April 11th.

MR. ADLER: I think that's possible, Your Honor.

THE COURT: I wasn't thinking about it being later than that, but --

MR. ADLER: I mean, we can look to trying to move it up.

THE COURT: I just want to know. Y'all seem to be agreeing, and so, is there a proposal to get this out of the way or is there -- are you going to do some debriefing?

MR. CHU: Your Honor, I think April 11th would be great, Your Honor.

THE COURT: Kind of sounds like a dodge to me.

Will there be debriefing?

MR. CHU: That depends on the defendant, Your Honor.

MR. ADLER: We've met with the government, and certainly if they want to have additional questions, we are happy to talk to them.

But I agree with Mr. Chu, April 11th is probably a good date.

THE COURT: All right. Well, if I agree with you

all, I will ruin my reputation, but I will.  April 11th, 2016
at 1:30 in this courtroom.

        I take it there's no reason to detain him?

        MR. CHU:  That's correct, Your Honor.

        THE COURT:  I agree with that.

        However, Mr. Correa, remember when you were
standing around and you just read in the paper about some guy
who was a felon and he was awaiting sentencing and he did
something terrible?

        THE DEFENDANT:  Yes, Your Honor.

        THE COURT:  You remember what you said ought to
happen to him?

        THE DEFENDANT:  Probably should be locked away.

        THE COURT:  The perspective is a little different.
So now you do what you thought he should have done when you
didn't think it was going to be you.

        And since you're a felon, Mr. Adler will talk
to you further about firearms; but it is illegal for you to
have momentary control of a firearm, parts of a firearm,
ammunition or bombs.  And there's a whole agency with no
sense of humor who does nothing but enforce that.

        THE DEFENDANT:  I understand.

        THE COURT:  So if you go over to somebody's house
and if they decided to show you a new shotgun, you say,
excuse me, I got to go.

1    THE DEFENDANT:  I can do that.

2    THE COURT:  Do you have any questions?

3    THE DEFENDANT:  No, Your Honor.

4    THE COURT:  Mr. Chu, do you have any questions?

5    MR. CHU:  No, Your Honor.  Thank you.

6    THE COURT:  Mr. Adler?

7    MR. ADLER:  No, Your Honor.

8    THE COURT:  Does Mr. Adler know when he is going to

9    be back?

10    CASE MANAGER:  I have just docketed the --

11    MR. ADLER:  I do, Your Honor.  I heard about that.

12    CASE MANAGER:  Except it has changed to 4:00

13    o'clock.  Yes, he knows.

14    THE COURT:  Can you tell me?

15    CASE MANAGER:  Oh, no.  January 13th at 4:00 p.m.

16    THE COURT:  Anybody else?

17    MR. ADLER:  Thank you, Judge.

18    THE COURT:  All right.

19        If you have any questions, call Mr. Adler or

20    your probation officer.

21        Now, take him down to 10 and you can meet, or

22    wherever you meet.

23    MR. ADLER:  The Marshals at pretrial.

24    THE COURT:  It's all probation now.

25    MR. ADLER:  All right.  I forgot.

1          THE COURT:  Oh, see that woman over there.  Are you

2    going to be his probation officer?

3          PROBATION OFFICER:  Your Honor, I believe I am going

4    to be assigned the presentence report.

5          THE COURT:  Okay.  Can he just follow you down to 2

6    or 3?

7          PROBATION OFFICER:  That would be fine, Your Honor.

8          THE COURT:  All right.  Thank you, gentlemen.

9

10

11                   (Conclusion of Proceedings)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              CERTIFICATION

2

3

4

5              I, Fred Warner, Official Court Reporter for the

6   United States District Court for the Southern District of

7   Texas, Houston Division, do hereby certify that the foregoing

8   pages 1 through 18 are a true and correct transcript of the

9   proceedings had in the above-styled and numbered cause before

10  the Honorable LYNN N. HUGHES, United States District Judge,

11  on the 8th day of January, 2016.

12              WITNESS MY OFFICIAL HAND at my office in Houston,

13  Harris County, Texas on this the 22nd day of January, A.D.,

14  2016.

15

16

17

18

19                              _____
                                    Fred Warner, CSR
20                                  Official Court Reporter

21

22

23

24

25