UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER CORREA | Case No. 4:15-679<br><br>~~Filed Under Seal~~<br><br>Redacted version unsealed<br>1-25-2017 |

### Sentencing Memo of the United States

Chris Correa intruded into Ground Control, the Astros' online database 48 times. He intruded into the Ground Control accounts of 5 different Astros employees. And for 2 ½ years, he intruded into the e-mail account of the head of the Astros' analytics department, as described below.

Correa pled guilty to 5 counts of accessing the Astros' computers without authorization, in violation of 18 U.S.C. § 1030. In his plea agreement, he agreed that he intended to cause $1.7 million of loss to the Astros, and that the sophisticated means enhancement should apply. ▮

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ) The United States asks that defendant be sentenced to 46 months, the low end of the Guidelines.[1]

A. **In addition to intruding into the Astros' Ground Control database, Correa also intruded into the e-mail account of Sig Mejdal, one of his rivals**

1. **Sig Mejdal was one of the architects of the Astros' top-ranked farm system**

Sig Mejdal (Victim A) was the Astros' Director of Decision Sciences – the head of their analytics department. This analytics department was a major source of the Astros' competitive advantage. The Astros aimed to win not by being richer, but by making smarter choices. By

---

[1] On further review, counsel for the United States noticed that 2 intrusions into Sig Mejdal's (Victim A) e-mail account were inadvertently categorized as intrusions into Ground Control. The proper number of intrusions into Ground Control is 48, not 50 as listed in the Response to Defendant's PSR Objections (Dkt #43).

1

combining the analytics department's discoveries with new ways of thinking, the Astros had carefully eked out subtle advantages that, in aggregate, had yielded what many observers had called the best group of prospects in the league.  *See, e.g., Astros' Farm System Ranked No. 1 by ESPN* <http://m.mlb.com/news/article/67201986/astros-farm-system-ranked-no-1-by-espn/>. But many of their advantages could erode away if other teams duplicated the Astros' thinking, much as an arbitrage opportunity quickly disappears as other market players take advantage of it.

### 2. Correa admitted to accessing Mejdal's e-mail account

In his plea agreement, Correa admitted that he used Mejdal's (Victim A) password to access Mejdal's Astros e-mail account on March 10, 2014.  Correa also intruded into Mejdal's Astros e-mail account on other occasions such as June 28, 2014.  There is no doubt that Correa could access Mejdal's Astros' e-mail account.

The question is exactly how many <u>other</u> times Correa intruded into Mejdal's e-mail account.  Unfortunately, the Astros changed e-mail systems, so only a limited number of logs are available.  But there are important clues.

First, Correa did not suddenly obtain Mejdal's password in 2014.  As Correa admitted in his plea agreement (and corroborated by his own e-mails), Mejdal was directed to turn over his Cardinals-owned laptop to Correa in December 2011 – along with the laptop's password. Unfortunately, when Mejdal joined the Astros in January 2012, he re-used an almost identical password, a password that Correa admitted to using.  Thus, Correa had the ability to access Mejdal's Astros e-mail account from January 2012.

Second, Mejdal reported to the FBI that he rarely, if ever, used the Astros' webmail system, which required logging in through an internet browser – instead, like most people, Mejdal simply accessed his e-mail from (i) his iPhone's Mail app or (ii) from Microsoft Outlook on his laptop.

Third, the Astros' e-mail logs show that when Correa intruded into Mejdal's account on March 10 & June 28, 2014 – the two days he admitted in his plea agreement – Correa left the same clues: (a) he entered the user name as *S*mejdal rather than *s*mejdal (what the Astros used) and (b) *mail*.astros.com instead of *webmail*.astros.com (what the Astros used). Although only a limited amount of the Astros' webmail logs were recovered, these logs show that Correa made the same mistakes when he accessed Mejdal's e-mails on at least the following dates:

| Date | Time (Central Time unless specified) |
|---|---|
| Mon, 3/10/2014 | 9:23:24 to 9:33:26 pm ET |
| Wed, 3/19/2014 | 8:58:40 to 8:59:12 pm |
| Sat, 5/3/2014 | 11:30:43 to 11:41:56 am |
| Sat, 5/17/2014 | 5/17/14 8:52:57 to 8:54:08 pm |
| Wed, 5/28/2014 | 3:22:24 to 3:23:17 |
| Wed, 5/28/2014 | 4:14:55 to 4:35:56 pm |
| Fri, 6/6/2014 | 6:33:53 to 6:51:46 am |
| Sun, 6/8/2014 | 12:54:21 to 12:58:11 pm |
| Mon, 6/16/2014 | 6:17:08 to 6:34:28 am |
| Sun, 6/22/2014 | 4:40:41 to 4:41:58 am |
| Sun, 6/22/2014 | 5:42:02 to 5:42:42 am |
| Sat, 6/28/2014 | 7:35:01 to 7:55:04 am |

Ultimately, if (a) Correa was given access to Mejdal's e-mail account in January 2012, (b) Correa admitted that he accessed Mejdal's e-mail on March 10, 2014, and (c) evidence obtained from Correa shows that he accessed Mejdal's e-mail in June 2014, the Court can reasonably infer that Correa enjoyed unfettered access to the e-mail account of the head of the Astros' analytics department for 2½ years (January 2012 to June 2014). As a result, he knew what projects the Astros' analytics department was researching, what concepts were promising, and what ideas to avoid. He had access to everything that Sig Mejdal, the head of the Astros' analytics team, read and wrote.

3

### B. In June 2014, defendant leaked confidential information, apparently to embarrass the Astros who had just received glowing coverage from Sports Illustrated

#### 1. Sig Mejdal, one of Correa's rivals, is lauded by Sports Illustrated

On June 25, 2014, the Houston Astros were last in their division, but observers heralded the team's future. That day, Sports Illustrated unveiled the cover of its next issue, crowning the Astros as "Your 2017 World Series Champs." *See* Exh. A (https://mobile.twitter.com/SInow/status/481814966757236740/photo/1). The issue promised to provide "An Unprecedented Look At How a Franchise Is Going Beyond Moneyball To Build the Game's Next Big Thing."

The feature article, "Astro-Matic Baseball," lavished praise on Sig Mejdal and Astros' GM Jeff Luhnow (Victim B) who had directed the Astros' revival – and who had worked with Correa when they were previously employed by the St. Louis Cardinals. *See* Exh. B (http://www.si.com/longform/astros/index.html (accessed July 13, 2016)). This article was released online on June 26, 2014. *Id.* Mejdal was also lauded in a companion article, "Dispatch From the Future: Now that the Astros are your 2017 World Champions, we take a look back at the rocky road that got them there." The stories were quickly picked up and spread nationwide.

Mejdal was one of Correa's rivals. They previously worked side by side in the Cardinals' analytics department, and in separate discussions with the FBI, reported having heated disputes with each other. In January 2012, when Mejdal left to join the Astros, they both assumed similar positions as heads of their respective analytics departments for teams that until 2013 played against each other in the same NL Central division. And now, this rival was now being praised even though his team had not yet begun to win.

4

### 2. On Friday night, June 27, 2014, Correa began trying to log into Ground Control

The next night, after months of not intruding into Ground Control, Correa began trying to log back in. For example, on Friday night, June 27, 2014, at 10:34 pm CT, Correa tried logging into the Ground Control accounts of Mejdal, GM Luhnow, and Astros analyst Colin Wyers (Victim C), using passwords that had previously worked for him. When that didn't work, he tried the accounts of Brent Strom, the Astros pitching coach (who had left the Cardinals the previous autumn), and Bo Porter, the Astros' then-manager. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

### 3. The next morning, Correa changed tactics

The Court can infer that Correa must have stewed about the cover story overnight because he renewed his intrusion attempts early the next morning. Switching tactics, he first searched through Mejdal's Astros e-mail account at 7:35 am for 20 minutes, and found an e-mail with the user names and Ground Control passwords of three Astros minor leaguers. At 7:55 am, Correa copied these passwords into a file he kept and e-mailed it to himself. Starting at 7:56 am, he then used this information to intrude into the Ground Control accounts of two of these minor leaguers (Victims D & E).

The Astros only gave limited access to their minor league players, so Correa then tried 23 more times to (unsuccessfully) log into the accounts of Mejdal, GM Luhnow, analyst Wyers (Victims A, B, C), and seven other high-ranking Astros personnel, using variations of passwords that had previously worked for him. At 9:52 am, 9:54 am, and 10:07 am, Correa updated his list

of passwords with the password variations that he was trying, and again e-mailed it to himself (which the FBI obtained by search warrant). Finally, Correa logged back into Victim E's Ground Control account at 12:17 pm, apparently in a last effort to discover anything worth leaking.

### 4. The Deadspin.com leak

Later that day, confidential notes of the Astros' trade discussions were leaked to Deadspin.com, a well-known sports blog (motto: Sports News without Access, Favor, or Discretion). See <http://deadspin.com/who-leaked-the-astros-hacked-data-and-why-1711968355>. Although he used an anonymous e-mailing service, it must have been Correa who leaked this information. It was Correa who had previously stolen those notes on March 27, 2014. It was Correa who posted them to Anonbin.com and Pastebin.com on March 30th. It was Correa who, on June 27th and 28th, after the Sports Illustrated coverage debuted, began searching through Ground Control for new information in an agitated state, but found none. It must have been Correa who leaked the information that he previously stole on March 27th.

On June 30, 2014, Deadspin broke the story, discussing at length 10 months of the Astros' confidential trade discussions. See Exh. C <http://deadspin.com/leaked-10-months-of-the-houston-astros-internal-trade-1597951970>. The story quickly spread across the country. Now, General Managers throughout Major League Baseball were forced to awkwardly reassure their players who had been reported as the subject of trade discussions. Ultimately, the Astros were forced to issue private apologies to every team in the league. It was a humiliating episode for the Astros.[2]

---

[2] One might wonder why Correa did not simply keep quiet about his access to Ground Control, and continue to siphon off the Astros' secrets. In context, Correa's access was fast dwindling. Although Correa had access to Mejdal's Ground Control account from no later than March 2013 onward, this access ended in January 2014, when a system-wide password reset was enforced. On March 10, 2014, Correa received an unexpected windfall when (i) the Astros reset everyone's Ground Control password to a default password, and (ii) he found the system-wide default

6

**C. The sophisticated means 2 level enhancement should apply because defendant took several steps to conceal his identity, his location, his devices, and his intrusions**

In *United States v. Musacchio*, the sophisticated means enhancement applied because defendants concealed their identities: "co-conspirators used administrator accounts to read [a rival company's] employees' email, which concealed their identities. They forwarded the text of the email using webmail accounts in an attempt to avoid leaving records. Though many individuals familiar with computers likely could have developed a similar process, we previously have applied the enhancement 'in cases involving some method that made it more difficult for the offense to be detected, even if that method was not by itself particularly sophisticated.'" 590 F. App'x 359, 366-67 (5th Cir. 2014), *aff'd*, 136 S. Ct. 709 (2016), *quoting United States v. Valdez*, 726 F.3d 684, 695 (5th Cir. 2013).

*Musacchio* is not an outlier case. Other representative examples include *United States v. Conner*, 537 F.3d 480 (5th Cir. 2008) (enhancement applied even though "This was not the most sophisticated fraud" – used fake IDs to obtain goods they later sold on eBay); *United States v. Jones*, 533 Fed. Appx. 448 (5th Cir. 2013) (used fake ID to negotiate a fraudulent check); *United States v. Podio*, 432 Fed. Appx. 308 (5th Cir. 2011) (used a magnetic card encoder).

In this case, realizing that his intrusions would be logged, Correa took several steps to conceal himself. First, he downloaded and used software called OnionBrowser to mask his identity and his location. Correa also used a feature on OnionBrowser to "spoof" his user agent string – that is, to mislead others into thinking he was using a different device. Similarly, when he used his work computer, Correa also masked his identity and location by using TOR.

---

password in Mejdal's e-mail account – but over time, Ground Control users would log in and be forced to change their passwords, gradually cutting off Correa's access.

7

Second, Correa concealed his intrusions in another, more subtle way. On March 9, 2014, shortly after the Houston Chronicle profiled Ground Control, the Astros took several security precautions, including resetting all Ground Control passwords to a default password. Then, when an Astros employee accessed his Ground Control account, he was immediately prompted to change the default password to some other, unique password.

After that, when Correa intruded into the Ground Control accounts of Mejdal, GM Luhnow, analyst Wyers, and other victims, Correa too was forced to change the default password to some password that he created. When he was done intruding into these accounts, Correa took care to change the password <u>back</u> to the default password to avoid tipping off the owners that someone else had accessed their accounts.

Just like the *Musacchio* defendants, Correa did these things to "make it more difficult for the offense to be detected, even if that method was not by itself particularly sophisticated." The sophisticated means enhancement should apply.

## Conclusion

Balancing these reasons with the reasons that defendant raises, the United States submits it is fair that Correa be sentenced to 46 months.

> Respectfully submitted,
>
> KENNETH MAGIDSON
> UNITED STATES ATTORNEY
>
> _____/s/_____
> Michael Chu
> Assistant U.S. Attorney